STATE OF VERMONT

SUPERIOR COURT                                        ENVIRONMENTAL DIVISION

| Phillips d/b/a Country View Auto Sales Site Plan | No. 56-5-15 Vtec |
|---|---|
| ************************************************ | ************************************************ |
| Phillips d/b/a Country View Auto Sales | No. 105-8-15 Vtec |

**DECISION ON THE MERITS**

These coordinated appeals relate to the Town of Clarendon's decision to grant site plan approval and a zoning permit to Joseph and Dianne Phillips, doing business as Country View Auto Sales ("Applicants"), for a new business and business sign at a pre-existing commercial building located on Route 7B Central in the Town of Clarendon, Vermont. In Docket No. 56-5-15 Vtec, Appellant Marjorie Southard challenges the decision of the Town of Clarendon Planning Commission ("Planning Commission") to issue site plan approval. Marion Pratico and Helen Darby are Interested Persons in that appeal. In Docket No. 105-8-15 Vtec, Appellant Marion Pratico challenges the Town of Clarendon Board of Zoning Appeals decision to issue a zoning permit to Applicants. Helen Darby is an Interested Person in the zoning permit appeal.

Attorney John H. Bloomer, Jr., represents Applicants. Attorney William H. Bloomer represents the Town of Clarendon ("Town"). Marjorie Southard was formerly represented by Attorney David L. Grayck, but is now self-represented. Appellant/Interested Person Marion Pratico and Interested Person Helen Darby are also self-represented.

The Court initially ordered the parties to engage a mediator and seek that mediator's assistance in resolving their disputes. However, Ms. Pratico advised that mediation was unlikely to bring about a resolution of their disputes. The Court thereafter relieved the parties of their obligation to proceed to mediation and set the matter for trial. In re Phillips, d/b/a Country View Auto Sales Applications, Nos. 56-5-15 Vtec and 1058-15 Vtec, slip op. at 5 (Vt. Super. Ct., Envtl. Div. Dec. 16, 2015) (Durkin, J.). The Court also denied several motions filed by Appellants[1] in both

---

[1] We use the term "Appellants" throughout this Decision to collectively refer to Ms. Southard, Ms. Pratico, and Ms. Darby, even though they appear as either an appellant or interested person in each of the two appeals.

appeals that requested that the Court enter judgment in their favor without the benefit of trial; the Court rejected these arguments. Id. at 1–5. In its ruling, the Court specifically rejected Appellants' arguments in each appeal that the Town of Clarendon Zoning Regulations ("Regulations") only allow the uses that Applicants propose in the Commercial and Industrial Zoning District. Id. at 5.

The trial of these coordinated appeals was completed in one day (March 2, 2016). Before the trial, the Court conducted a site visit of the subject property and surrounding neighborhood. While the observations and statements made during the site visit were not received as evidence, the site visit provided helpful context for the evidence that was presented at trial.

Based upon the evidence presented, the Court renders the following Findings of Fact, Conclusions of Law, and the Judgment Order that accompanies this Merits Decision.

**Findings of Fact**

1. Applicants propose new uses for an already developed property, located at 2856 Route 7B Central in Clarendon, Vermont. This property contains 10.5± acres and is identified as Parcel No. 7202856 on a page from the Town of Clarendon tax map that was admitted at trial as Exhibit E.

2. This property (hereinafter referred to as "the Subject Property") is located in the Residential and Commercial Zoning District ("RC District"), as that District is described in Regulations § 202(B) and as identified on the Land Use District Map appended to the Regulations; a copy of the Regulations and Map was admitted at trial as Exhibit G.

3. The Subject Property contains two buildings, only one of which Applicants intend to use for their proposed business. The building that they intend to use was last used as an office space, with some storage areas. Photos of the two buildings on the Subject Property were admitted at trial as Exhibit N, O, and Q. The building Applicants propose to use is in the background of the photos; it is aligned perpendicular to Route 7B. Applicants intend to only use a portion of that building, where the prior office was located. The portion that they intend to use is in the rear of the building displayed in photo Exhibit O, where the building consists of a single story and has three small windows and a door.

4. Applicants do not propose to use any portion of the second building depicted in photo Exhibits N, O, and Q. That second building is currently used by a tree cutting contractor; this second building was previously used to store and work on race cars.

5. The Subject Property also contains a gravel parking area, aligned parallel to Route 7B. This parking area has capacity for twenty-five or more parked vehicles, although the individual parking spots are undefined. Applicants propose to use up to eight of the parking spaces in this area for their proposed business.

6. Applicants do not propose to change the location or total number of parking spaces that already exist on the Subject Property.

7. One of the Applicants, Joseph T. Phillips, Jr., has worked at an area automobile dealership for several years. His goal, together with his wife, Diane Phillips, is to establish a wholesaling business for used automobiles, many of which will be purchased from area dealerships after the dealerships have taken the used vehicles in on trade. His general plan is to clean and repair the used vehicles he purchases at other sites and then bring them to one or more vehicle auctions for resale.

8. Applicants do not propose to do any of the cleaning of the purchased vehicles at the Subject Property. They also do not plan to have any necessary mechanical repairs performed at the Subject Property. If a vehicle is in need of repair, Applicants intend to have that repair work done by an independent mechanic who has their own existing repair facility.

9. Once repaired and cleaned up, Applicants propose to transport the vehicles to auction for resale; the auction site that they will use most often is located in White River Junction, Vermont. They will either drive the vehicles individually to the auction site, or transport multiple vehicles using a vehicle transport tractor/trailer.

10. Applicants anticipate that they will have enough vehicles ready for resale such that they will bring one or more vehicles to auction every week.

11. No vehicle transport tractors or trailers will be stored on the Subject Property.

12. Applicants intend to secure the necessary state license to become a vehicle wholesaler. That license will entitle Applicants to receive four "dealer plates" which will be used to temporarily operate a vehicle on state highways while it awaits sale.

13.     Applicants' principal business will involve the wholesale purchase and sale of used vehicles.  However, they anticipate having a few vehicles available for retail sale that they will display on no more than four of the eight parking spots available to them.  Mr. Phillips credibly described this retail portion of their proposed business to be "minimal."

14.     None of the purchased vehicles will be parked or displayed on the Subject Property unless one of Applicants' dealer plates is affixed to it.

15.     Mr. Phillips credibly testified that, due to the nature of the proposed business, there will likely not be more than two round-trip vehicle trips per day caused by the proposed business.

16.     There will be no employees at the proposed business, other than Mr. and Mrs. Phillips.

17.     A frame for a ground sign currently exists on the property, as depicted in photo Exhibit S. Applicants propose to install a new sign in this frame that depicts their business name: Country View Auto Sales.  This new sign will be slightly less than twenty square feet.

18.     No subdivision of the Subject Property is proposed; the two separate businesses (Applicants' and the tree contractor's) will operate independently on the Subject Property.

19.     Applicants propose no changes to the exterior of the building that they will occupy.  There will also be no changes to the exterior lighting at the property.

20.     The only interior renovations that Applicants propose is to the office portion of the building, where they intend to install new flooring and perhaps a fresh coat of paint on the interior walls.

21.     The surrounding neighborhood consists of a mixed use of residences, open fields, and several business and commercial facilities, including a car dealership, a distribution business, a former motel, a vegetable stand, a saw mill, and a plumbing contractor's yard.

22.     Appellants live in nearby (although not adjacent) homes along Route 7B Central.  They provided no credible testimony or other evidence of how Applicants proposed business will adversely impact them or their property.

## Conclusions of Law

These coordinated appeals call for the Court to determine whether Applicants' proposed project conforms to the applicable site plan provisions of the Regulations (Docket No. 56-5-15 Vtec) and whether Applicants are entitled to a zoning permit (Docket No. 105-8-15 Vtec).  While we conduct our review of the pending applications on a de novo basis, pursuant to 10 V.S.A

§ 8504(h), we limit our review to the issues that have been presented by an applicant through their statement of questions. Id.; see also V.R.E.C.P. 5(f).

I. **Site Plan Application**

We first consider the legal issues presented by Appellant Southard in her appeal concerning Applicants' site plan application. In that Statement of Questions, which lists eight separate Questions, Appellant Southard raised two general legal issues: first, whether the proposed use is permitted in the applicable zoning district (Questions 1 through 6) and second, whether the proposed use may only be permitted in the applicable zoning district after having received conditional use approval.

We first look to the table of permitted uses identified for each zoning district. See Regulations § 305: Table of Uses. One of the permitted uses listed for the RC District is "Professional Office," which is defined as "[a]n office or office structure, not greater than 3,000 square feet in total area, whose use is limited to work that causes ordinary noise, odor, air, water, or soil pollution." Regulations Art. X: Definitions.

We conclude that Applicants' proposed use conforms to the definition of professional office in the Regulations and should be regarded as a permitted use in the RC District. Only Mr. and Mrs. Phillips will be employed at their planned office, which will occupy only a small portion of one of the two buildings on the Subject Property. While a specific square footage was not suggested at trial, we conclude from the evidence presented that the space to be used will be well below the 3,000 square foot limit of this definition. The only business Applicants will conduct on the property will be the administrative operations of their planned wholesale automotive resale business. There will be no vehicle work done on this site. Mr. and Mrs. Phillips' comings and goings will not amount to any measurable or material impacts upon the neighborhood. In fact, their use is likely to have far less impacts upon the neighborhood than occurred from the previous uses on this property or the current uses on the surrounding property.

Mr. Phillips does intend to offer for sale a few of the vehicles that are acquired through his wholesale operation, to be displayed and made available for retail purchase at no more than four of the existing parking spaces on the Subject Property. We consider this portion of the proposed use to be minimal, at best. However, because this retail sale portion may be a use beyond the "professional office" use, we revisit the Table of Uses in Section 305. We note that

the Table does not include a listing for automobile sales in any zoning district, although evidence was provided at trial of other automobile sales facilities in Town, including near the Subject Property.

Section 303 governs the applicability of uses not listed in the Table; it notes that while non-listed uses "shall not be allowed," this provision continues by noting that non-listed uses may be allowed upon a determination "that a none-listed [sic] use has the same general characteristics and the same impacts on adjoining land uses as a listed use." Id.

Given the minimal nature of the retail sale of a few vehicles that Applicants purchase wholesale, we conclude that this retail aspect of their proposed use will cause the same or lesser impacts on the current adjoining land uses as their professional office use. There will be no additional employees and little additional traffic. In fact, when compared to another permitted use in the RC District—"Retail Establishment"—we conclude that Applicants' planned retail sales will provide much less impacts than the listed permitted uses.[2] We therefore conclude that Applicants' proposed use is permitted in the RC District.

Appellants continued to assert at trial that Applicants' proposed use should only be allowed in the Commercial and Industrial Zoning District. We previously considered and rejected this legal argument. See In re Phillips, d/b/a Country View Auto Sales Applications, Nos. 56-5-15 Vtec and 1058-15 Vtec, slip op. at 1–5 (Vt. Super. Ct., Envtl. Div. Dec. 16, 2015) (Durkin, J.). The facts presented at trial did not cause us to rethink our legal conclusions in this regard. The specific language of the Regulations offers no support for Appellants' assertion.

Our conclusions here resolve Appellant Southard's Questions 1 through 6 from her Statement of Questions.

We turn to Applicants' second assertion in the site plan proceeding: that Applicants' proposed use first requires conditional use review.

A municipality is authorized to allow certain uses to be permitted in identified zoning districts, provided that such uses conform to enumerated conditional use standards. 24 V.S.A § 4414(3). The Town of Clarendon has elected to allow such conditional uses, as evidenced by Regulations Art. V: Uses Permitted Subject to Conditions. But in order for an applicant's proposed

---

[2] "Retail establishment" is defined as "a store used [sic] primarily engaged in selling merchandise, generally without transformation, and rendering services incidental to the sale of merchandise." Regulations Art. X.

use to be subjected to this heightened scrutiny under the applicable zoning regulations, the zoning regulations must first specifically identify the proposed use as a "conditional use" for the applicable zoning district.

There was no credible evidence presented that the uses that Applicants here propose should be defined as conditional uses in the RC District. In fact, as noted above, all the credible evidence revealed that Applicants' proposed uses are permitted in the RC District. We therefore answer Appellant Southard's Questions 7 and 8 in the negative: that the conditional use provisions of the Regulations do not govern Applicants' permitted uses.

This resolves all legal questions raised by Appellant Southard in her Statement of Questions.

## II.   Zoning Permit Application

Applicants also requested a zoning permit for their proposed use of the subject property.[3] When the Town of Clarendon Board of Zoning Appeals ("BZA") authorized the issuance of a zoning permit, Appellant Marion Pratico filed the appeal that was assigned Docket No. 105-8-15 Vtec.[4]

When a change of use or new sign is proposed, the Regulations require that a zoning permit be applied for and received. Regulations §104. In addition to determining whether the proposed use is permitted, which we have completed above, any new construction or use must conform to the applicable dimensional requirements, contained in Regulations Art. IV. Our analysis here is somewhat simplified, since Applicants propose no new construction, other than the re-establishment of a business sign. Nonetheless, we note that the existing improvements

---

[3] The Regulations and Town officials that testified at trial appear to use the terms "zoning permit" and "building permit" interchangeably. Since no new building is proposed, we only use the term "zoning permit." In fact, due to the minimal nature of the proposed changes, and the fact that Applicants appear to simply be proposing a continuation of the same use for the portion of the building that they intend to occupy (office space), the Zoning Administrator offered at trial that he was no longer of the opinion that a permit was even needed for Applicants' proposed use. While the Court does not wholly disagree with the Administrator's assessment, we concluded that due to the extensive proceedings and resources already expended, we should complete our analysis of whether the pending permit application must be granted.

[4] A copy of the BZA decision appealed from was not offered into evidence at trial. We are therefore relying upon Ms. Pratico's Notice of Appeal, filed August 24, 2015, for this brief procedural history and for the specific name of the appropriate municipal panel from which she took her appeal.

on the Subject Property all conform to the minimum lot size, building coverage, building height, frontage, and front, rear, and side yard setback requirements. Id.

As to the proposed new business sign that Applicants propose, we conclude that it also conforms to the applicable Regulation provision, which directs that signs for "permitted non-residential use, within any district . . ., not exceed[] a total of twenty square feet." Regulations § 821(C). Since Applicants' proposed sign will be just under twenty square feet, we conclude that it conforms to the applicable Regulation.

Appellant Pratico initially filed a somewhat disjointed Statement of Questions, dated September 8, 2015. She then made an additional filing dated October 1, 2015, labeled "Rest of my, Marion Pratico's S. O. Q." In response to the Court's request for further clarification, made at the initial conference for Docket No. 108-8-15 Vtec held on September 16, 2015, Appellant Pratico on October 5, 2015 filed a document entitled "Clarification – of Question #1 (one) ordered by the Judge." In that filing, Appellant Pratico clarified that her principal concern was whether Applicants' proposed "wholesale auto office and sign . . . conformed with the Clarendon Zoning Regulations and the Clarendon Town Plan."

The Regulations provide no authority for this Court to inquire of whether Applicants' proposed project conforms to the applicable town plan. This is perhaps the simplest of projects, with no new construction and no modifications proposed to the existing buildings and property, save for a re-establishment of a business sign on an existing ground sign frame. If the Town believed it necessary for such an applicant to also prove that such a project conformed with the applicable town plan, then the Town should have amended its Regulations to require such a review. In the absence of such a provision, we decline to take on a review that the Regulations do not authorize.

Appellants remaining Questions do not raise further issues beyond those addressed in this decision and previously addressed in the Court's decision on pretrial motions: In re Phillips, d/b/a Country View Auto Sales Applications, Nos. 56-5-15 Vtec and 1058-15 Vtec (Vt. Super. Ct., Envtl. Div. Dec. 16, 2015) (Durkin, J.). We therefore conclude that Applicants' proposed use and sign conform with all applicable Regulation provisions and direct that the requested zoning permit should be issued.

## **Conclusion**

For all these reasons, we conclude that Applicants' proposed use of the previously developed property at 2856 Route 7B Central conforms with all applicable provisions of the Town of Clarendon Zoning Regulations as a use permitted in the Residential and Commercial Zoning District and that Applicants should receive a zoning permit for their proposed use.

We remand these proceedings to the Town of Clarendon, solely to complete the ministerial act of issuing a zoning permit to Applicants in conformance with this Decision.

A Judgment Order accompanies this Merits Decision. This completes the current proceedings before this Court.

Electronically signed on September 19, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division